1 │ Robert D. Hoffman, SBN 123458
   │ CHARLSTON, REVICH & WOLLITZ LLP
2 │ 1925 Century Park East, Suite 1250
   │ Los Angeles, California 90067-2746
3 │ Phone: (310) 551-7000
   │ Facsimile: (310) 203-9321
4 │ e-mail: rhoffman@crwllp.com

5 │ Attorneys for Plaintiff
   │ ADMIRAL INSURANCE COMPANY

FILED

08 JUN 23 PM 12: 39

BY: ___ DEPUTY

6

7

8 UNITED STATES DISTRICT COURT

9 SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | ADMIRAL INSURANCE COMPANY, a Delaware Corporation, | Case No.: **'08 CV 1103 JM RBB** |
|---|---|---|
| 12 | | |
| 13 | Plaintiff, | **COMPLAINT OF ADMIRAL INSURANCE COMPANY FOR DECLARATORY RELIEF** |
| 14 | v. | **AND REIMBURSEMENT OF DEFENSE PAYMENTS** |
| 15 | BLUE HAVEN NATIONAL MANAGEMENT, INC., a California Corporation; P&A HOLDINGS, INC., a | |
| 16 | California Corporation; VICTORIA WILKINS, a California resident, | |
| 17 | | |
| 18 | Defendants. | |

19

20    Admiral Insurance Company, for its complaint, alleges:

21

22    **INTRODUCTION**

23

24    1.    Admiral Insurance Company ("Admiral") seeks a judicial

25 determination that it has no duty to defend or indemnify Blue Haven National

26 Management, Inc. ("BHNM"), formerly known as Z&E Management, Inc. ("Z&E")

27 under an employment practices liability insurance policy issued by Admiral to P&A

28 Holdings, Inc. ("P&A") ("the Admiral Policy") with respect to the claims asserted

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**    ORIGINAL

1  against BHNM by Victoria Wilkins ("Wilkins") in the action *Victoria Wilkins v.*

2  *Blue Haven Pools National, Inc., et al.*, San Diego County Superior Court Case No.

3  37-2007-00078057-CU-OE-CTL ("California Action").

4      2.    Admiral seeks, and is entitled to obtain, a judicial declaration that no

5  potential insurance coverage exists under the Admiral Policy for the claims against

6  BHNM in the California Action because BHNM does not qualify as an insured

7  under the Admiral Policy.  BHNM is not a named insured under that policy, does

8  not qualify as a subsidiary of P&A pursuant to the definitions and terms of the

9  Admiral Policy and was not scheduled as an insured under the Subsidiary

10 Endorsement to the Admiral Policy.

11     3.    Admiral is presently defending, under the Admiral Policy, the claims

12 in the California Action against defendant Lawrence Katz ("Katz") as well as the

13 claims against defendants William Unger ("Unger") and Blue Haven Pools

14 National, Inc. ("Blue Haven Pools") (Katz, Unger and Blue Haven Pools are

15 collectively referred to as the "Blue Haven Parties") in the action *Victoria Wilkins v.*

16 *Blue Haven Pools National, Inc., et al.*, District Court of Dallas County F-116th

17 Judicial District Cause No. 08-00510 ("Texas Action") pursuant to a full and

18 complete reservation of rights.  (The California and Texas Actions are collectively

19 referred to herein as the "Wilkins Actions").

20

21                 **THE PARTIES**

22

23     4.    At all times herein mentioned, plaintiff Admiral was and is a

24 corporation organized and existing under the laws of the state of Delaware, with its

25 principal place of business located in Cherry Hill, New Jersey, and a citizen of the

26 states of Delaware and New Jersey.

27     5.    Admiral is informed and believes, and thereon alleges, that at all times

28 herein relevant, BHNM was and is a corporation organized and existing under the

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

1 │ laws of the state of California, with its principal place of business located in

2 │ San Diego, California and a citizen of the state of California.

3 │      6.    Admiral is informed and believes, and thereon alleges, that at all times

4 │ herein relevant, P&A Holdings, Inc. was and is a corporation organized and existing

5 │ under the laws of the state of California, with its principal place of business located

6 │ in San Diego, California and a citizen of the state of California.

7 │      7.    Admiral is informed and believes, and thereon alleges, that at all times

8 │ herein relevant, Wilkins was and is a resident domiciled in the state of California

9 │ and a citizen of the state of California.

10 │      8.    Wilkins has been named as a defendant in this action so as to bind her

11 │ to any judicial determination made herein regarding the lack of coverage under the

12 │ Admiral Policy for the claims asserted by Wilkins against BHNM.  Admiral is

13 │ amenable to dismissing Wilkins from this action upon a stipulation that she agrees

14 │ to be bound by the judicial determinations made herein.

15 │

16 │ **JURISDICTION AND VENUE**

17 │

18 │      9.    This Court has jurisdiction over the subject matter in this action

19 │ pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum

20 │ of $75,000, exclusive of interest and costs, and is between citizens of different

21 │ states.  The amount in controversy is the amount of damages that Wilkins seeks to

22 │ recover in the California Action.  In the prayer for relief in her complaint in the

23 │ California Action, Wilkins alleges that she seeks to recover "compensatory damages

24 │ in a sum of not less than $500,000."

25 │      10.    Pursuant to 28 U.S.C. §1391(a), venue is appropriate in the Southern

26 │ District of California because jurisdiction is founded upon diversity of citizenship;

27 │ the parties are subject to personal jurisdiction in this District at the time this action

28 │ ///

1  was commenced and the parties hereto are also parties in the pending California

2  Actions in San Diego County Superior Court.

4  **FACTUAL BACKGROUND**

6  **A.    THE WILKINS ACTIONS**

8          11.    On October 16, 2007, Wilkins filed a complaint for damages in the

9  California Action against the Blue Haven Parties, BHNM, Phillip Del Negro, Sandy

10  Del Negro, BRP, Inc. ("BRP"), and Aspen Risk Management Group, Inc.

11  ("Aspen").

12          12.    In that complaint in the California Action, Wilkins alleged the

13  following causes of action as to the following parties:

14          1.    Sexual harassment - quid pro quo (Blue Haven Parties, BHNM,

15                Mr. Del Negro and BRP);

16          2.    Sexual harassment - hostile work environment (Blue Haven

17                Parties, BHNM, Mr. Del Negro and BRP);

18          3.    Retaliation in violation of public policy (Blue Haven Parties,

19                BHNM, Mr. Del Negro and BRP);

20          4.    Defamation (the Del Negros, BRP and BHNM);

21          5.    Wrongful termination in violation of public policy (Blue Haven

22                Pools, Katz, Mr. Del Negro and BRP);

23          6.    Negligent infliction of emotional distress (Blue Haven Parties,

24                BHNM, Mr. Del Negro and BRP);

25          7.    Intentional infliction of emotional distress (Blue Haven Parties,

26                BHNM, Mr. Del Negro and BRP);

27          8.    Negligent misrepresentation (Aspen);

28          9.    Promissory fraud (Aspen);

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

| | | |
|---|---|---|
| 1 | 10. | Fraud (Aspen); |
| 2 | 11. | Assault and battery (Katz, Unger, BRP, BHNM and Blue Haven |
| 3 | | Pools); |
| 4 | 12. | False imprisonment (Katz, Unger, BRP, BHNM and Blue Haven |
| 5 | | Pools); |
| 6 | 13. | Negligence (Mr. Del Negro, BRP and BHNM); and |
| 7 | 14. | Theft (Does 121-130). |

13.    Wilkins alleges that in or about January 2005, she was first employed by BHNM, and then prior to November 2006, was transferred to BRP. (Complaint ¶15).

14.    Wilkins alleges that at a corporate event in Las Vegas from November 28, 2006 to November 30, 2006, she was allegedly subject to a hostile work environment, where inappropriate comments were allegedly made about her to certain vendors by Phillip Del Negro of BRP (Complaint, ¶¶ 17-19).

15.    It is alleged that upon returning from Las Vegas, Wilkins allegedly complained to the human resources department about "Del Negro's inappropriate behavior." (Complaint ¶22).

16.    According to Wilkins, from that point forward, Del Negro began retaliating against her by allegedly alienating her from other employees and increasing her job burdens. *Id.*

17.    Wilkins alleged that she was subjected to sexual harassment in connection with a January 10, 2007 Blue Haven annual sales meeting in Dallas, Texas ("Alleged Dallas Incident"). (Complaint ¶¶ 23-40).

18.    Plaintiff alleges that subsequent to the Alleged Dallas Incident, inappropriate remarks were made about her and that she was allegedly suffered various forms of "retaliatory harassment." (Complaint ¶¶ 41-43).

///

CHARLSTON, REVICH
& WOLLITZ LLP
28436T.WPD

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

1    19.    From April 2007 until June 2007, Wilkins allegedly "labored under

2    defendants' retaliation and defamation," and was terminated from her employment

3    in June 2007 allegedly without cause or justification.  (Complaint ¶47).

4    20.    On or about January 3, 2008, Wilkins served a first amended

5    complaint ("FAC") in the California Action wherein Sandy Del Negro and Aspen

6    were dropped as defendants and the following causes of action withdrawn: fourth

7    cause of action for defamation; eighth cause of action for negligent

8    misrepresentation; ninth cause of action for promissory fraud; tenth cause of action

9    for fraud; thirteenth cause of action for negligence; and fourteenth cause of action

10   for theft of confidential information.

11   21.    In the FAC, Wilkins added causes of action directed solely to BRP and

12   BHNM as follows: ninth cause of action for failure to pay overtime; tenth cause of

13   action for failure to pay for meal and rest periods; eleventh cause of action for

14   failure to provide accurate wage statements; twelfth cause of action for waiting time

15   penalties; and thirteenth cause of action for unfair competition.

16   22.    On January 16, 2008, Wilkins filed a complaint in the Texas Action

17   that contained causes of action for assault and battery, false imprisonment, and

18   intentional infliction of emotional distress against Blue Haven Pools and Unger.

19   23.    The claims asserted in the Texas Action had previously been the

20   subject of claims against Blue Haven Pools and Unger, and certain other defendants,

21   in the California Action.

22   24.    In the Texas Action, plaintiff alleged that she was subjected to sexual

23   harassment and other alleged wrongdoing in connection with the Alleged Dallas

24   Incident referred to in the complaints in the California Action.

25   25.    On February 14, 2008, Wilkins dismissed, without prejudice, her

26   claims against Blue Haven Pools and Unger in the California Action.

27   ///

28   ///

**B.    THE UNDERWRITING OF THE ADMIRAL POLICY**

26.    In October 2006, a renewal proposal form ("Renewal Proposal Form") was submitted to Admiral's agent Monitor Liability Managers, Inc. ("Monitor") for the renewal of an employment practices liability insurance policy that had been issued to P&A for the policy period November 5, 2005 to November 5, 2006 ("2005 Policy").

27.    In response to Question No. 16 of the Renewal Proposal Form requesting information on subsidiaries of P&A, the box "none" was checked.

28.    Attached hereto as Exhibit "A" is a true and correct redacted copy of the Renewal Proposal Form.

29.    On November 1, 2006, Monitor issued a quotation for the Admiral Policy.

30.    On November 9, 2006, after the 2005 Policy had expired, surplus lines broker Crump Financial Services, Inc. ("Crump") requested Monitor to issue a binder for the Admiral Policy.

31.    On November 9, 2006, Monitor issued a binder ("Binder") for the Admiral Policy that contained, among others, the following condition precedent ("Subsidiary Condition"):

> WITHIN 15 DAYS OF BINDING: Please supply an updated list of all subsidiaries or confirm all subsidiaries are as per the expiring policy.

32.    The Binder was effective for 30 days and was to expire on December 9, 2006.

33.    The Binder contained the following language: "Upon receipt and review of the Proposal Form and any related information, documentation, or conditions, Monitor reserves the right to cancel, modify or limit the coverage provided by this binder."

CHARLSTON, REVICH
& WOLLITZ LLP
28436T.WPD

1    34.    On December 10, 2006, Monitor issued to Crump a Notice of Non-

2    Payment of Premium that stated that the Binder had expired on December 9, 2006

3    without payment of the appropriate premium and that also stated that the Subsidiary

4    Condition had not been satisfied.

5    35.    On December 22, 2006, Crump provided Monitor with a "Named

6    Insured Schedule" ("Schedule") and requested that 9 entities that had been on the

7    subsidiary endorsement to the 2005 Policy be deleted from the subsidiary

8    endorsement to the Admiral Policy.

9    36.    The Schedule contained information on the owners of the stock of

10    certain entities proposed to be listed on the subsidiary endorsement to the Admiral

11    Policy.

12    37.    According to the Schedule, P&A the named insured, had no ownership

13    interest in Z&E, an entity that had been listed on the subsidiary endorsement to the

14    2005 Policy.

15    38.    On December 28, 2006, Monitor's underwriter advised Crump in an e-

16    mail that she sought to "make sure I am only listing on the policy the correct

17    subsidiaries."

18    39.    The December 28, 2006 Monitor e-mail to Crump stated that "We will

19    not cover any entity that is not 'more than' 50% owned by the named insured."

20

21    **C.    THE ISSUANCE OF THE ADMIRAL POLICY**

22

23    40.    On February 21, 2007, the Admiral Policy was issued to P&A for the

24    policy period November 5, 2006 to August 1, 2007 bearing policy no. 4714156/1

25    with a limit of liability, inclusive of damages and costs of defense, of $1 million for

26    each claim and $1 million in the aggregate for all claims, with a $25,000 deductible.

27    41.    Attached hereto as Exhibit "B" is a true and correct copy of the

28    Admiral Policy.

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

42.     The insuring agreement of the Employment Practices Liability
Insurance Coverage Section (Form EPL 4300 01-06) ("EPL Coverage Form") of the
Admiral Policy provides as follows:

**I.      Insuring Agreement**

**Employment Practices Liability Insurance**

This **Policy** shall pay on behalf of the **Insureds** all **Loss** arising from
any **Claim** first made against the **Insureds** during the **Policy Period**
and reported to the **Insurer** in writing during the **Policy Period** or
within 90 days thereafter, for any **Wrongful Act**.

43.     The Admiral Policy contains the following definitions of certain terms
that appear in the EPL Coverage Form:

**III.    Additional Definitions**

In addition to the Definitions listed in Section III. of the
Common Policy Terms and Conditions Section, whenever
printed in boldface type, and whether in the singular or plural
form, in this **Coverage Section** the following terms shall have
the meanings indicated below.

E.      "**Harassment**" means unwelcome sexual or non-sexual
advances, requests for sexual or non-sexual favors or
other verbal, visual or physical conduct of a sexual or
non-sexual nature that:

1.      is explicitly or implicitly made a condition of
employment, or

2.      are used as a basis for employment decisions, or

3.      create a work environment that interferes with
performance.

**Harassment** also means assault or battery, but only if
related to a charge of sexual harassment.

F.      "**Insured(s)**" means:

1.      any director, officer, or **Employee** of an **Insured
Entity** while acting solely within the course and
scope of employment with the **Insured Entity**, or

CHARLSTON, REVICH
& WOLLITZ LLP
28436T.WPD

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

2.    an **Insured Entity**.

This **Coverage Section** shall cover **Loss** arising from a **Claim** made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual **Insured** for a **Claim** arising solely out of his or her status as the spouse of an individual **Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the individual **Insured** and the spouse, or property transferred from the individual **Insured** to the spouse; provided, however, this extension shall not afford coverage for any **Claim** for any **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any **Wrongful Act** of an individual **Insured**.

\*    \*    \*

J.    "**Wrongful Act(s)**" means any actual or alleged act by an **Insured** arising from an actual or potential employment relationship with the claimant for:

1.    discrimination or **Harassment** because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, marital status, or any other basis prohibited by law which results in termination of the employment relationship, or demotion or failure or refusal to hire or promote, or failure to accommodate an **Employee** or potential **Employee**, or denial of an employment privilege, or the taking of any adverse or differential employment action, or

2.    sexual **Harassment** including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance, or

3.    termination, constructive discharge, wrongful failure to hire, wrongful demotion, negligent retention, negligent supervision, negligent hiring, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of any implied contract or implied agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation.

///
///

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

Charlston, Revich
& Wollitz LLP
28436t.wpd

44.     The Common Policy Terms and Conditions Section ("Common Policy Form") contains the following definitions of terms that appear in the Admiral Policy:

### III.    Definitions

Whenever printed in boldface type and whether in the singular or plural form in this **Policy**, the following terms shall have the meanings indicated below.

\*        \*        \*

B.      "**Insured Entity**" means the **Named Insured** and any **Subsidiary**.

\*        \*        \*

H.      "**Subsidiary(ies)**" means:

1.      an entity of which the **Named Insured** owns on or before the inception of the **Policy Period** more than 50 percent of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**, or

2.      an entity, subject to the terms of Section V.A. of the **Coverage Section(s)**, that the **Insured Entity** forms or acquires during the **Policy Period**.

45.     The Admiral Policy contains an endorsement entitled "Addition to Section III.H. Addition of Subsidiary" (form CT 43091 01-06) ("Subsidiary Endorsement") that amends the definition of "**Subsidiary**" in the Common Policy Form and states in part as follows:

In consideration of the premium paid for this **Policy**, it is understood and agreed that Section III. Definitions H. "**Subsidiary**" of the Common Policy Terms and Conditions Section of this Policy is amended by the addition of the following:

III. H.:    It is further understood and agreed that **Subsidiary** shall also include the following:

\*        \*        \*

///

11

1    46.    Z&E did not qualify as a subsidiary of P&A under Section III.H. of the

2  Common Policy Form of the Admiral Policy.

3    47.    Z&E was not one of the entities listed on the Subsidiary Endorsement

4  to the Admiral Policy.

5

6  **D.    ADMIRAL'S DEFENSE OF THE WILKINS ACTIONS**

7

8    48.    On November 13, 2007, Monitor, on behalf of Admiral, advised

9  counsel for P&A that the only parties to the California Action who potentially

10  qualified as insureds under the Admiral Policy were Blue Haven Pools, and Katz

11  and Unger in their capacity as officers or directors of Blue Haven Pools.

12    49.    On November 13, 2007, Monitor advised counsel for P&A that neither

13  BHNM, BRP nor the Del Negros qualified as insureds under the Admiral Policy.

14    50.    On November 13, 2007, Monitor agreed to defend the claims against

15  the Blue Haven Parties in the California Action under the Admiral Policy pursuant

16  to a full and complete reservation of rights.

17    51.    On December 2, 2007, Monitor issued a further reservation of rights

18  regarding the defense of the claims against the Blue Haven Parties under the

19  Admiral Policy.

20    52.    On April 8, 2008, Admiral agreed to defend the claims against the

21  Blue Haven Parties in the Texas Action under the Admiral Policy pursuant to a full

22  and complete reservation of rights.

23

24  **FIRST CLAIM FOR RELIEF**

25  (Declaratory Relief - No Potential For Coverage As to All Defendants)

26

27    53.    Admiral refers to the foregoing paragraphs 1 through 52, and

28  incorporates the same herein by this reference.

1    54.    An actual controversy has arisen and now exists between Admiral and

2  BHNM in that Admiral contends, and is informed and believes, that BHNM denies,

3  that BHNM does not qualify as an insured under the Admiral Policy and that no

4  potential coverage exists under the Admiral Policy with respect to any claims

5  asserted by Wilkins against BHNM because BHNM does not qualify as an insured

6  under the Admiral Policy.

7    55.    Admiral seeks, and is entitled to obtain, a judicial declaration that

8  BHNM does not qualify as an insured under the Admiral Policy, and that as a result,

9  Admiral has no duty to defend or indemnify BHNM or any defendant in the Wilkins

10  Actions in their capacity as an officer, director and/or employee of BHNM with

11  respect to the claims asserted by Wilkins.

12

13                          **SECOND CLAIM FOR RELIEF**

14                  (Reimbursement of Defense Fees and Costs as to BHNM)

15

16    56.    Admiral refers to the foregoing paragraphs 1 through 52, and

17  incorporates the same herein by this reference.

18    57.    An actual controversy has arisen and now exists between Admiral and

19  BHNM in that Admiral contends, and is informed and believes, that BHNM denies,

20  that if a declaration is issued that no potential coverage exists under the Admiral

21  Policy for the claims asserted by Wilkins against BHNM, that Admiral is entitled to

22  recover from BHNM legal fees and costs and other expenses incurred by Admiral

23  pursuant to the Admiral Policy to defend the California Action that are allocable to

24  claims against BHNM and/or claims against any defendant in the Wilkins Actions

25  acting in their capacity as an officer, director and/or employee of BHNM.

26    58.    Admiral seeks, and is entitled to obtain, an order that it is entitled to

27  recover from BHNM legal fees and costs and other expenses incurred by Admiral

28  pursuant to the Admiral Policy in connection with the defense of claims by Wilkins

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

CHARLSTON, REVICH
& WOLLITZ LLP
28436T.WPD

1  that are allocable to BHNM and/or any defendant in the Wilkins Actions acting in
2  their capacity as an officer, director and/or employee of BHNM.

3

4         WHEREFORE, Admiral prays for judgment as follows:

5    1.    For a declaration that BHNM does not qualify as an insured under the
6          Admiral Policy;

7    2.    For a declaration that no potential coverage exists under the Admiral
8          Policy for any of the claims against BHNM with respect to the Wilkins
9          Actions;

10   3.    For a declaration that no potential coverage exists under the Admiral
11         Policy for any of the claims against defendants in the Wilkins Actions
12         acting in their capacity as an officer, director and/or employee of
13         BHNM;

14   4.    For a declaration that Admiral owes no duties or obligations of any
15         nature or kind, including but not limited to, any duty to defend or
16         indemnify BHNM or any defendant acting in their capacity as an
17         officer, director and/or employee of BHNM in connection with the
18         Wilkins Actions;

19   5.    For an order that Admiral is entitled to recover from BHNM all legal
20         fees, costs and other expenses incurred by Admiral for the defense of
21         claims by Wilkins that are allocable to BHNM and/or defendants;
22         acting in their capacity as officers, directors and employees of BHNM;

23   6.    For pre-judgment and post-judgment interest on any amounts awarded
24         to Admiral;

25   7.    For Admiral's costs of suit incurred herein; and

26  ///
27  ///
28  ///

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

1        8.     For such other and further relief as the Court deems appropriate.

2

3  Dated:  June 20, 2008        CHARLSTON, REVICH & WOLLITZ LLP
                               ROBERT D. HOFFMAN

4

5                       By: _____

6                         Robert D. Hoffman

7                         Attorneys for Plaintiff
                         ADMIRAL INSURANCE COMPANY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT OF ADMIRAL INSURANCE COMPANY**

CHARLSTON, REVICH
& WOLLITZ LLP
28436T.WPD

**EXHIBIT A**

# Admiral Insurance Company
1255 Caldwell Road, Cherry Hill, NJ 08034

**Renewal**
**Proposal Form**

## Employment Practices Liability Insurance

### CLAIMS MADE WARNING FOR APPLICATION
**THIS PROPOSAL FORM IS FOR A CLAIMS MADE POLICY, RELATING TO CLAIMS MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.**

Whenever printed in this Proposal Form, the terms in boldface type shall have the same meanings as indicated in the Policy. This Proposal Form is to be completed with respect to the **entire Insured Entity**. Insured Entity as used herein is defined to include the Named Insured and any Subsidiaries.

Name of Named Insured  *P+A Holdings, Inc.*

Street Address  *636 Broadway, Third Floor*   Suite

City  *San Diego, CA*   State   Zip Code  *92101*

The Officer designated as agent of the Insured Entity and of all Insureds to receive any and all notices from the Insurer or their authorized representatives concerning this Insurance:
*Chris Waters*   *V. President*   *cwaters @ bluehaven.com*
Name   Title   E-mail Address

### General Information (Provide details to all "Yes" answers by attachment)

1. Form of organization:  ☒ Corporation  ☐ Sole Proprietorship  ☐ Joint Venture
   ☐ Partnership  ☐ Limited Liability Corporation  ☐ Other:
2. The Named Insured has been in continuous operation since:  *1994*  **REDACTED**
3. What is the Named Insured's Federal Employer Identification Number (FEIN) or Taxpayer Identification Number?
4. (a) What is the Insured Entity's Primary Standard Industry Code (SIC)?
   (b) Describe the Insured Entity's nature of operations:  *Holding Company for Bluehaven Pools*
5. (a) Within the last 12 months, has the Insured Entity been involved in any bankruptcy proceeding?  ☐ Yes ☒ No
   (b) Within the next 12 months, is the Insured Entity contemplating filing a petition for protection under the bankruptcy code?  ☐ Yes ☒ No
6. (a) Within the last 12 months, has the Insured Entity had any Subsidiary, plant, facility, branch or office closings, consolidations or layoffs?  ☐ Yes ☒ No
   (b) Within the next 24 months, does the Insured Entity anticipate any Subsidiary, plant, facility, branch or office closings, consolidations or layoffs?  ☐ Yes ☒ No
   If "Yes", provide the following details by attachment: Date of event; number of Employees affected; whether outside employment counsel was consulted; and, whether severance packages were offered to all Employees affected.

### Current Employee Information (Provide details to all "Yes" answers by attachment)

7. (a) Number of Employees:  Do not include Leased Employees or Independent Contractors in numbers below.

| | Full Time | Part Time | Seasonal | Temporary |
|---|---|---|---|---|
| Current Year: | 413 | 1 | | |
| Prior Year: | 433 | 5 | | |

   (b) How many Leased Employees does the Insured Entity employ annually?  *0*
   (c) How many Independent Contractors does the Insured Entity employ annually?  *468*
   (d) What is the Insured Entity's annual employee turnover rate for the last 12 months?  *2* %
8. Within the last 12 months, has there been any change (resignations, departures, retirements, etc.) in the position of the Chairman of the Board, President, Chief Executive Officer or Chief Financial Officer?  ☒ Yes ☐ No
   If "Yes", provide the following details by attachment: Name of individual and date of change.
9. What percentage of the Insured Entity's employees currently earns more than $75,000?  **REDACTED**

*Ronald Zaborac  Retired ( Former President + CEO)*

EPL 24515 (rev. 10-01)   Page 1 of 4

The term Policy is hereby amended to read **Policy**
and the term **Wrongful Employment Act(s)** is hereby
amended to read **Wrongful Act(s)** wherever they
appear in this Proposal Form.

**Admiral Insurance Company**

10. Does the Insured Entity (provide details to "No" answers by attachment):
   (a) Currently employ a full time Human Resources professional?  ☒ Yes ☐ No
   (b) Utilize employment applications for all prospective Employees?  ☒ Yes ☐ No
   (c) Require the Human Resource Department to review and approve each proposed Employee termination?  ☐ Yes ☒ No
   (d) Have outside employment counsel review each proposed Employee termination?  ☒ Yes ☐ No
   (e) Conduct mandatory periodic Employee education regarding prohibited forms of harassment?  ☒ Yes ☐ No
   (f) Periodically have its employment policies and procedures reviewed by outside employment counsel?  ☒ Yes ☐ No
   (g) Periodically have its employment policies and procedures distributed to all Employees?  ☒ Yes ☐ No

11. Indicate which formal written policies and procedures have been implemented and attach a copy of each.
   If "None", so state.  ☐ None

   ☒ Employee Handbook / Manual   ☒ Anti-Harassment Policy, including   <u>Employers with more than 50 Employees</u>
   ☒ Anti-Discrimination Policy –       Sexual Harassment                   ☒ Family Medical Leave Act
      Equal Employment Opportunity   ☐ Adherence to Employment "at-      <u>California Employers Only</u>
      (EEO) Policy                          will" relationship with all Employees   ☒ California Family Rights Act

**Litigation and Claim Information (Provide details to all "Yes" answers by attachment)**

12. During the last 5 years, has the Insured Entity or any of its directors, officers or Employees known of, or been involved in any lawsuit, charges, inquiries, investigations, grievances or other administrative hearings or proceedings before any of the following agencies and/or in any of the following forums, including both domestic or foreign equivalents?
   (a) National Labor Relations Board?  ☐ Yes ☒ No
   (b) Equal Employment Opportunity Commission?  ☐ Yes ☒ No
   (c) Office of Federal Contract Compliance Programs?  ☐ Yes ☒ No
   (d) U.S. Department of Labor?  ☐ Yes ☒ No
   (e) Any state or local government agency such as the Labor Department or fair employment agency?  ☐ Yes ☒ No
   (f) U.S. District or state court?  ☐ Yes ☒ No

13. During the last 5 years, has any current or former Employee or third party made any Claim, or otherwise alleged discrimination, harassment, wrongful discharge and/or Wrongful Employment Acts against the Insured Entity or its directors, officers or Employees?  ☒ Yes ☐ No
   A Claim is not limited to the filing of a lawsuit or complaint with the Equal Employment Opportunity Commission or similar state or local agency. A Claim may also include a written demand or threat by any current or former Employee seeking relief in connection with an employment-related dispute or grievance.

| IF "YES" TO ANY PART OF QUESTIONS 12. OR 13., PROVIDE FULL DETAILS FOR EACH ALLEGATION, EVEN IF THE MATTER HAS SINCE BEEN SETTLED OR OTHERWISE RESOLVED, BY COMPLETING A CLAIM SUPPLEMENTAL FORM EPL 4610 OR, BY PROVIDING THE FOLLOWING INFORMATION FOR EACH ALLEGATION BY ATTACHMENT: |
|---|
| (a) Date Claim first made   (b) Claimant's Name   (c) Allegation   (d) Current Status |
| (e) Demand Amount   (f) Settlement (Indemnity) or Reserve Amount   (g) Attorney's fees |

**Admiral Insurance Company**

## Previous Insurance Information (Provide details to all "Yes" answers by attachment)

14. Provide the following information regarding the Insured Entity's Employment Practices Liability insurance for the current policy year. If "None", so state.  ☐ None

| Insurance Carrier | Expiration Date | Limit of Liability | Retentions | Premium |
|---|---|---|---|---|
| Admiral Ins Co | 11/5/06 | $ | $ | $ |

15. Has the Extended Reporting Period (or Discovery Period) been exercised for the Insured Entity's most recent Employment Practices Liability Policy?   ☐ Yes ☑ No

## Documents Required

16. Provide details to all "Yes" answers, when applicable, by attachment

17. Provide the following information on all Subsidiaries of the Insured Entity. If "None", so state.   ☑ None
   (a) Name  (b) Percent of ownership  (c) Nature of business
   (d) Date of acquisition/creation  (if less than 100 percent,  (e) Domestic or foreign
   list minority owners)

18. Provide the following information on all plants, facilities, branches or offices of the Insured Entity. If "None", so state.   ☐ None
   (a) Location  (b) Domestic or foreign  (c) Estimated number of Employees 413

**IT IS UNDERSTOOD AND AGREED THAT COVERAGE IS NOT PROVIDED FOR SUBSIDIARIES IN QUESTION 17.
UNLESS THE INFORMATION REQUESTED ABOVE IS PROVIDED BY ATTACHMENT. ALSO, PROVIDE DETAILS
TO QUESTION 18. BY ATTACHMENT, AS APPROPRIATE.**

## Please Read Carefully

The undersigned, acting on behalf of all Insureds, declare that the statements set forth herein are true and correct and that thorough efforts have been made to obtain sufficient information from each and every Insured proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form.

The undersigned agree that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representations and that they are material and are the basis of the insurance contract. The undersigned further agree that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the Policy. Any material submitted with the Proposal Form shall be maintained on file (either electronically or paper) with the Insurer and shall be deemed to be attached hereto as if physically attached.

It is further agreed that:

* if any significant change in the condition of the applicant is discovered between the date of this Proposal Form and the Policy Inception date, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately;
* any Policy, if issued, will be in reliance upon the truth of such representations; provided, however, with respect to such statements and representations, no knowledge or information possessed by any Insureds, except for those person or persons who executed the Proposal Form, shall be imputed to any other Insureds and further provided that if any person who executed the Proposal Form knew that such statement or representation was inaccurate or incomplete, then this Policy will be void as to all Insureds;
* this Proposal Form has been completed as respects the entire Insured Entity;
* the signing of this Proposal Form does not bind the undersigned to purchase the insurance.

| | |
|---|---|
| _Larry M Katz_ | Title: President CEO |
| Chairman of the Board of Directors, President, or Chief Executive Officer | |
| _Larry Katz_ | Dated: 8/31/06 |
| Print Name and Title | |
| CHRIS WAKERS  HR + Ins Administrator | Dated: 8/31/06 |
| Human Resources Manager (or equivalent position) | |

This Carolina Casualty Insurance Company Proposal Form, including any material submitted herewith, shall be held in strictest confidence.

**A POLICY CANNOT BE ISSUED UNLESS THE PROPOSAL FORM IS PROPERLY SIGNED AND DATED.**

Please submit this Proposal Form including appropriate documentation to:
Monitor Liability Managers, Inc., 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008-4039

| | |
|---|---|
| _G.S. Levine Insurance Services_ | Dated: 9/28/06 |
| Submitted by (PRODUCER) | |
| _Cindy Anderson_ | 0A91059 |
| AGENT'S NAME (Print Name) | AGENT'S LICENSE NUMBER |

**Admiral Insurance Company**

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

NOTICE TO NEW MEXICO, PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF KENTUCKY: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A CRIME AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF FLORIDA, MINNESOTA, NEW JERSEY, OHIO, AND OKLAHOMA: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO DISTRICT OF COLUMBIA, MAINE, MASSACHUSETTS, TENNESSEE, AND VIRGINIA APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.



# P&A HOLDINGS, INC.

P.O. Box 126878 • San Diego, CA 92112
(619) 233-3522 • fax: (619) 233-3557 • www.bluehaven.com

September 7, 2006

Carolina Casualty Insurance Company
4600 Touchton Road East, Bldg. 100, Suite 400
Jacksonville, FL 32246

Re: Employment Practices Liability Insurance: Answer to question 13 on application

Date First Notified:
            **REDACTED**
Name(s):

Allegation:
           **REDACTED**

Current Status: Pre-litigation discovery, mediation unsuccessful

Demand Amount: Non Made Yet

Attorney's Fees:
           **REDACTED**

# Admiral Insurance Company

1255 Caldwell Road, Cherry Hill, NJ 08034

**Declarations Page**

## Employment Practices Liability Insurance

### CLAIMS MADE WARNING FOR DECLARATIONS

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE). PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in the **Policy**.

**Item 1.** Name and Address of **Named Insured**:

P & A Holdings, Inc.
Suite 310
636 Broadway
San Diego, CA 92101

Policy Number: 4714156 / 1

Person designated to receive all correspondence from the **Insurer**:

Chris Waters
Vice President

**Item 2.** **Policy Period**: From November 5, 2006 (inception date) to August 1, 2007 (expiration date)
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured**)

**Item 3.** Purchased **Coverage Sections**:
Employment Practices Liability Insurance Coverage Section: [x] Yes [ ] No

**Item 4.** Limit of Liability for the **Policy Period** (inclusive of **Damages** and **Costs of Defense**):
A. $1,000,000 each **Claim**, but in no event exceeding
B. $1,000,000 in the aggregate for all **Claims**

**Item 5.** Applicable Deductibles:
Employment Practices Liability Insurance Coverage Section: $25,000

**Item 6.** Premium: $18,195

**Item 7.** Prior and Pending Litigation Dates:
Employment Practices Liability Insurance Coverage Section: November 5, 2001

**Item 8.** Extended Reporting Period: Option 1: 12 months for 100.00 percent of the "full annual premium"

Option 2: 24 months for 150.00 percent of the "full annual premium"

Option 3: 36 months for 200.00 percent of the "full annual premium"

**Item 9.** Forms and Endorsements attached:
Policy Form: CT 2340 (01-06); EPL 4300 (01-06)

| | |
|---|---|
| CT 41001 (01-06) | Incorporated Agreement with Enhanced Severability |
| CT 41200 (01-06) | Service of Suit |
| CT 43091 (01-06) | Addition to Section III. H. Addition of Subsidiary |
| CT 44900 (01-06) | Addition to Section IV. Certified Acts of Terrorism Exclusion |
| CT 45014 (01-06) | Addition to Section V. Waiver of Deductible if No Liability |
| EPL 43055 (01-06) | Modification to Section III. D. Independent Contractor Carve-out |
| EPL 43113 (01-06) | Addition to Section III. J. Third Party Liability Coverage |

**Item 10.** Notice to the **Insurer** as provided in sections VII. A. and VII. B. of the Common Policy Terms and Conditions Section of this **Policy** shall be sent to: Monitor Liability Managers, Inc., Claims Department

Address: 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008-4039
Fax: (847) 806-4017
Email: newclaim@monitorliability.com

EPL 4301 (01-06)

Page 1 of 2

Admiral Insurance Company

All other notices required to be given to the **Insurer** under this **Policy** shall be sent to: Monitor Liability Managers, Inc.

Address:    2850 West Golf Road, Suite 800, Rolling Meadows, IL  60008-4039
Fax:        (847) 806-6282

The Employment Practices Liability Insurance **Policy** shall constitute the contract between the **Insureds** and the **Insurer**.

Authorized Representative: _____    Date Issued:  February 21, 2007

EPL 4301  (01-06)                                                             Page 2 of  2

**Admiral Insurance Company**
1255 Caldwell Road, Cherry Hill, New Jersey  08034

## CALIFORNIA DISCLOSURE NOTICE

1.  THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA.    THESE    COMPANIES    ARE    CALLED "NONADMITTED" OR "SURPLUS LINES" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION    AND    ENFORCEMENT    WHICH    APPLIES    TO CALIFORNIA LICENSED INSURERS.

3. THE    INSURER    DOES    NOT    PARTICIPATE    IN    ANY    OF    THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINES INSURERS APPROVED BY THE INSURANCE COMMISSIONER.  ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD    ASK    QUESTIONS    OF    YOUR    INSURANCE    AGENT, BROKER, OR "SURPLUS LINES" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

As of: 2/15/2007                               Page 1 of 1

## Admiral Insurance Company
1255 Caldwell Road, Cherry Hill, NJ 08034                                        Page 1 of 1

# Incorporated Agreement
# with Enhanced Severability

By acceptance of this proposal, the Chairperson of the Board of Directors, President, or Chief Executive Officer, acting on behalf of all **Insureds**, declare that the statements set forth in the accepted EPL 24515 (rev. 10-01) application are true and correct and that thorough efforts have been made to obtain sufficient information from each and every **Insured** proposed for this insurance to facilitate the proper and accurate completion of the accepted application. The accepted application shall constitute the "Proposal Form".

The Chairperson of the Board of Directors, President, or Chief Executive Officer agree that the particulars and statements contained in the Proposal Form and any material submitted therewith are their representations and that they are material and are the basis of the insurance contract. The Chairperson of the Board of Directors, President, or Chief Executive Officer further agree that the Proposal Form and any material submitted therewith shall be considered attached to and a part of the **Policy**. Any material submitted with the Proposal Form shall be maintained on file (either electronically or paper) with the **Insurer** and shall be deemed to be attached hereto as if physically attached.

It is further agreed that:

- if any significant change in the condition of the applicant is discovered between the date of the Proposal Form and the **Policy** inception date, which would render the Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the **Insurer** immediately;

- any **Policy**, if issued, will be in reliance upon the truth of such representations; provided, however, with respect to such statements and representations, no knowledge or information possessed by any **Insureds** shall be imputed to any other **Insureds**. If any person or persons knew as of the **Policy** inception date that such declarations and statements contained in the Proposal Form were untrue, inaccurate or incomplete, then this **Policy** will be void as to that person or persons. However, if the Chairperson of the Board of Directors, President, Chief Executive Officer, or Chief Financial Officer of the **Insured Entity** knew as of the **Policy** inception date that such declarations and statements contained in the Proposal Form were untrue, inaccurate or incomplete, then this **Policy** will be void as to that person or persons and the **Insured Entity;**

- the Proposal Form has been completed as respects the <u>entire</u> **Insured Entity**.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| P & A Holdings, Inc. | 4714156/1 |
| Effective Date of This Endorsement | Authorized Representative |
| 11/05/2006 | |

EPL 4300 (01-06)                    16868-714156-421093                    CT 41001 (01-06)

EXHIBIT B                                        024

**Admiral Insurance Company**
1255 Caldwell Road, Cherry Hill, NJ 08034

Page 1 of 1

## Service of Suit

It is understood and agreed that in the event of the failure of the **Insurer** hereon to pay any amount claimed to be due hereunder, the **Insurer** will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada, will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. Nothing in this endorsement constitutes or should be understood to constitute a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States or Canada, to remove an action to a United States District Court, or to seek a transfer of an action to another court as permitted by law.

It is further agreed that service of process in such suit may be made upon Daniel A. MacDonald, Senior Vice President of Admiral Insurance Company, 1255 Caldwell Road, P.O. Box 5725, Cherry Hill, New Jersey 08034-3220, or his designee, and that in any suit instituted against any one of them upon this contract, the **Insured Entity** will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the **Insurer** in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that it or they will enter a general appearance upon the **Insurer's** behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefor, the **Insurer** hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and the **Insurer** hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
| --- | --- |
| P & A Holdings, Inc. | 4714156/1 |
| Effective Date of This Endorsement | Authorized Representative |
| 11/05/2006 | |

EPL 4300 (01-06)                    16870-714156-421093                    CT 41200 (01-06)

EXHIBIT B

025

**Admiral Insurance Company**
1255 Caldwell Road,  Cherry Hill, NJ  08034

Page 1 of  1

# Addition to Section III. H.
# Addition of Subsidiary

In consideration of the premium paid for this **Policy**, it is understood and agreed that section III. Definitions H. "**Subsidiary**" of the Common Policy Terms and Conditions Section of this **Policy** is amended by the addition of the following:

III. H.:    It is further understood and agreed that **Subsidiary** shall also include the following:

Blue Haven Pools of Southern California, Inc.

Pool Construction By BH, Inc.

BHPCSC, Inc.

BHSB, Inc.

Blue Haven Construction Co., Inc.

Blue Haven Pools National, Inc.

Blue Haven Pools of Georgia, Inc.

Blue Haven Pools of Louisiana, Inc.

Blue Haven Pools of Tampa, Inc.

Blue Haven Pools of West Palm Beach, Inc.

Capitol Blue Haven Pools, Inc.

Diving Lady of Arizona, Inc.

Diving Lady, Inc.

Haven Construction, Inc.

Par Pools, Inc.

BHNB Pool Construction, Inc.

Pools By Design, Inc.

Twenty-First Century Tucson Arizona

BH-Raleigh, Inc.

BH Pool Construction, Inc.

BH Pools of Upstate - SC, Inc.

BH Pools of Houston

Z&E, LLC

Golden State Industries of Nevada, Inc.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>P & A Holdings, Inc. | Policy Number<br>4714156/1 |
|---|---|
| Effective Date of This Endorsement<br>11/05/2006 | Authorized Representative |

**Admiral Insurance Company**
1255 Caldwell Road, Cherry Hill, NJ 08034

Page 1 of 1

# Addition to Section IV.
## Certified Acts of Terrorism Exclusion

In consideration of the premium paid for this **Policy**, it is understood and agreed that:

1.  Section IV. Exclusions of the Common Policy Terms and Conditions Section of this **Policy** is amended by the addition of the following:

    IV.:    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any injury or damage arising out of a **Certified Act of Terrorism**.

2.  Solely for the purposes of the provisions of this endorsement, section III. Definitions of the Common Policy Terms and Conditions Section of this **Policy** is amended by the addition of the following:

    III.:    "**Certified Act of Terrorism**" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

    The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **Certified Act of Terrorism**.

    a.    The act resulted in aggregate losses in excess of $5 million; and

    b.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the Unites States or to influence the policy or affect the conduct of the United States Government by coercion.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured P & A Holdings, Inc. | Policy Number 4714156/1 |
|---|---|
| Effective Date of This Endorsement 11/05/2006 | Authorized Representative |

EPL 4300 (01-06)                   16905-714156-421093                   CT 44900 (01-06)

EXHIBIT B

027

**Admiral Insurance Company**
1255 Caldwell Road, Cherry Hill, NJ 08034

Page 1 of 1

# Addition to Section V.
## Waiver of Deductible if No Liability

In consideration of the premium paid for this **Policy**, it is understood and agreed that:

1.  Section III. Definitions of the Common Policy Terms and Conditions Section of this **Policy** is amended by the addition of the following:

    III.: "**No Liability**" means with respect to a **Claim** made against the **Insured(s)**:

    1.  a final judgment of no liability obtained prior to trial, in favor of all **Insureds**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals, or

    2.  a final judgment of no liability obtained after trial, in favor of all **Insureds**, after the exhaustion of appeals.

    In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

2.  Section V. Limits of Liability and Deductibles of the Common Policy Terms and Conditions Section of this **Policy** is amended by the addition of the following:

    V.: No Deductible shall apply, even as to **Costs of Defense**, to any **Claim** which is in the form of a civil action for monetary relief, in which:

    1.  there is a determination of **No Liability**; or

    2.  the **Claim** is dismissed or stipulated dismissed without prejudice and without any payment of any consideration by any **Insured**.

    If there is a determination of **No Liability** in a **Claim**, the **Insurer** shall reimburse **Costs of Defense** paid by the **Insured** in such **Claim**.

    If a **Claim** is dismissed or stipulated dismissed without prejudice and without any payment of any consideration by any **Insured**, the **Insurer** shall reimburse **Costs of Defense** paid by the **Insured** in such **Claim** 90 days after the date of the dismissal or stipulation so long as (i) the **Claim** (or any other **Claim** which together with such **Claim** would be deemed a single **Claim**) is not brought again within such 90 day period and (ii) the **Insured Entity** provides the **Insurer** with a written undertaking in a form satisfactory to the **Insurer** to repay the **Insurer** for such reimbursement in the event the **Claim** (or any other **Claim** which together with such **Claim** would be deemed a single **Claim**) is brought again after such 90 day period and before the expiration of the statute of limitations for such **Claim**.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>P & A Holdings, Inc. | Policy Number<br>4714156/1 |
|---|---|
| Effective Date of This Endorsement<br>11/05/2006 | Authorized Representative |

EPL 4300 (01-06)　　　　　　　16910-714156-421093　　　　　　　CT 45014 (01-06)

**Admiral Insurance Company**
1255 Caldwell Road, Cherry Hill, NJ 08034

Page 1 of 1

---

## Modification to Section III. D.
## Independent Contractor Carve-out

In consideration of the premium paid for this **Policy**, it is understood and agreed that section III. Additional Definitions D. "**Employee**" of the Employment Practices Liability Insurance Coverage Section of this **Policy** is deleted in its entirety and replaced with the following:

III. D.:    "**Employee**" means:

1.    an individual whose labor or service is engaged by and directed by an **Insured Entity**, including part-time, leased, seasonal and temporary individuals, or

2.    an individual who is a volunteer or intern for the **Insured Entity**, but only if the **Insured Entity** provides indemnification to such individual in the same manner as that provided to the **Insured Entity's** employees.

Independent contractors are not **Employees**. An individual's employment status shall be determined as of the date of the **Wrongful Act**.

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>P & A Holdings, Inc. | Policy Number<br>4714156/1 |
|---|---|
| Effective Date of This Endorsement<br>11/05/2006 | Authorized Representative |

EPL 4300 (01-06)                     16971-714156-421093                     EPL 43055 (01-06)

EXHIBIT B

029

**Admiral Insurance Company**
1255 Caldwell Road,  Cherry Hill, NJ  08034

Page 1 of  1

## Addition to Section III. J.
## Third Party Liability Coverage

In consideration of the premium paid for this **Policy**, it is understood and agreed that section III. Additional Definitions J. "**Wrongful Act(s)**" of the Employment Practices Liability Insurance Coverage Section of this **Policy** is amended by the addition of the following:

III. J.:   "**Wrongful Acts**" also means any actual or alleged discrimination, sexual harassment or violation of any natural person's civil rights relating to such discrimination or sexual harassment, but only if such **Wrongful Act** is alleged to have been committed by an **Insured** and relates to a customer(s), client(s) or other natural person(s), other than an **Employee** or applicant for employment, with the **Insured Entity**.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| P & A Holdings, Inc. | 4714156/1 |

| Effective Date of This Endorsement | Authorized Representative |
|---|---|
| 11/05/2006 | |

EPL 4300 (01-06)                              16978-714156-421093                              EPL 43113 (01-06)

EXHIBIT B

030

# Admiral Insurance Company

1255 Caldwell Road, Cherry Hill, NJ 08034

**Renewal**
**Proposal Form**

## Employment Practices Liability Insurance

### CLAIMS MADE WARNING FOR APPLICATION
**THIS PROPOSAL FORM IS FOR A CLAIMS MADE POLICY, RELATING TO CLAIMS MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.**

Whenever printed in this Proposal Form, the terms in boldface type shall have the same meanings as indicated in the Policy. This Proposal Form is to be completed with respect to the **entire Insured Entity**. **Insured Entity** as used herein is defined to include the **Named Insured** and any **Subsidiaries**.

Name of Named Insured *P & A Holdings, Inc.*

| Street Address *636 Broadway, Third Floor* | | Suite |
|---|---|---|
| City *San Diego, CA* | State *92101* | Zip Code |

The Officer designated as agent of the **Insured Entity** and of all **Insureds** to receive any and all notices from the Insurer or their authorized representatives concerning this insurance:

| *Chris Waters* | *V. President* | *cwaters@bluehaven.com* |
|---|---|---|
| Name | Title | E-mail Address |

## General Information (Provide details to all "Yes" answers by attachment)

1. Form of organization: ☒ Corporation ☐ Sole Proprietorship ☐ Joint Venture ☐ Partnership ☐ Limited Liability Corporation ☐ Other:_____
2. The Named Insured has been in continuous operation since: ___*1994*___ **REDACTED**
3. What is the Named Insured's Federal Employer Identification Number (FEIN) or Taxpayer Identification Number
4. (a) What is the Insured Entity's Primary Standard Industry Code (SIC)?
   (b) Describe the Insured Entity's nature of operations: *Holding Company for Bluehaven Pools*
5. (a) Within the last 12 months, has the Insured Entity been involved in any bankruptcy proceeding? ☐ Yes ☒ No
   (b) Within the next 12 months, is the Insured Entity contemplating filing a petition for protection under the bankruptcy code? ☐ Yes ☒ No
6. (a) Within the last 12 months, has the Insured Entity had any Subsidiary, plant, facility, branch or office closings, consolidations or layoffs? ☐ Yes ☒ No
   (b) Within the next 24 months, does the Insured Entity anticipate any Subsidiary, plant, facility, branch or office closings, consolidations or layoffs? ☐ Yes ☒ No
   If "Yes", provide the following details by attachment: Date of event; number of Employees affected; whether outside employment counsel was consulted; and, whether severance packages were offered to all Employees affected.

## Current Employee Information (Provide details to all "Yes" answers by attachment)

7. (a) Number of Employees: Do not include Leased Employees or Independent Contractors in numbers below.

| | Full Time | Part Time | Seasonal | Temporary |
|---|---|---|---|---|
| Current Year: | *413* | *1* | | |
| Prior Year: | *433* | *5* | | |

   (b) How many Leased Employees does the Insured Entity employ annually? *0*
   (c) How many Independent Contractors does the Insured Entity employ annually? *468*
   (d) What is the Insured Entity's annual employee turnover rate for the last 12 months? *2* %
8. Within the last 12 months, has there been any change (resignations, departures, retirements, etc.) in the position of the Chairman of the Board, President, Chief Executive Officer or Chief Financial Officer? ☒ Yes ☐ No
   If "Yes", provide the following details by attachment: Name of individual and date of change.
9. What percentage of the Insured Entity's employees currently earns more than $75,000? **REDACTED**

*Ronald Zaberer Retired (Former President + CEO)*

EPL 24515 (rev. 10-01)

Page 1 of 4

The term Policy is hereby amended to read **Policy** and the term **Wrongful Employment Act(s)** is hereby amended to read **Wrongful Act(s)** wherever they appear in this Proposal Form.

EXHIBIT B

031

## Admiral Insurance Company

10. Does the Insured Entity (provide details to "No" answers by attachment):
    (a) Currently employ a full time Human Resources professional? ☑ Yes ☐ No
    (b) Utilize employment applications for all prospective Employees? ☑ Yes ☐ No
    (c) Require the Human Resource Department to review and approve each proposed Employee termination? ☐ Yes ☑ No
    (d) Have outside employment counsel review each proposed Employee termination? ☑ Yes ☐ No
    (e) Conduct mandatory periodic Employee education regarding prohibited forms of harassment? ☑ Yes ☐ No
    (f) Periodically have its employment policies and procedures reviewed by outside employment counsel? ☑ Yes ☐ No
    (g) Periodically have its employment policies and procedures distributed to all Employees? ☑ Yes ☐ No

11. Indicate which formal written policies and procedures have been implemented and attach a copy of each. If "None", so state.  ☐ None

    ☑ Employee Handbook / Manual
    ☑ Anti-Discrimination Policy – Equal Employment Opportunity (EEO) Policy

    ☑ Anti-Harassment Policy, including Sexual Harassment
    ☐ Adherence to Employment "at-will" relationship with all Employees

    Employers with more than 50 Employees
    ☑ Family Medical Leave Act
    California Employers Only
    ☑ California Family Rights Act

## Litigation and Claim Information (Provide details to all "Yes" answers by attachment)

12. During the last 5 years, has the Insured Entity or any of its directors, officers or Employees known of, or been involved in any lawsuit, charges, inquiries, investigations, grievances or other administrative hearings or proceedings before any of the following agencies and/or in any of the following forums, including both domestic or foreign equivalents?
    (a) National Labor Relations Board? ☐ Yes ☑ No
    (b) Equal Employment Opportunity Commission? ☐ Yes ☑ No
    (c) Office of Federal Contract Compliance Programs? ☐ Yes ☑ No
    (d) U.S. Department of Labor? ☐ Yes ☑ No
    (e) Any state or local government agency such as the Labor Department or fair employment agency? ☐ Yes ☑ No
    (f) U.S. District or state court? ☐ Yes ☑ No

13. During the last 5 years, has any current or former Employee or third party made any Claim, or otherwise alleged discrimination, harassment, wrongful discharge and/or Wrongful Employment Acts against the Insured Entity or its directors, officers or Employees? ☑ Yes ☐ No

    A Claim is not limited to the filing of a lawsuit or complaint with the Equal Employment Commission or similar state or local agency. A Claim may also include a written demand or threat by any current or former Employee seeking relief in connection with an employment-related dispute or grievance.

---

**IF "YES" TO ANY PART OF QUESTIONS 12. OR 13., PROVIDE FULL DETAILS FOR EACH ALLEGATION, EVEN IF THE MATTER HAS SINCE BEEN SETTLED OR OTHERWISE RESOLVED, BY COMPLETING A CLAIM SUPPLEMENTAL FORM EPL 4610 OR, BY PROVIDING THE FOLLOWING INFORMATION FOR EACH ALLEGATION BY ATTACHMENT:**

| | | | |
|---|---|---|---|
| (a) Date Claim first made | (b) Claimant's Name | (c) Allegation | (d) Current Status |
| (e) Demand Amount | (f) Settlement (Indemnity) or Reserve Amount | | (g) Attorney's fees |

EXHIBIT B

032

**Admiral Insurance Company**

## Previous Insurance Information (Provide details to all "Yes" answers by attachment)

14. Provide the following information regarding the Insured Entity's Employment Practices Liability insurance for the current policy year. If "None", so state.  ☐ None

Insurance Carrier _Admiral Ins. Co_    Expiration Date _11/5/06_    Limit of Liability $____    Retentions $____    Premium $____

15. Has the Extended Reporting Period (or Discovery Period) been exercised for the Insured Entity's most recent Employment Practices Liability Policy?  ☐ Yes ☑ No

## Documents Required

16. Provide details to all "Yes" answers, when applicable, by attachment.

17. Provide the following information on all Subsidiaries of the Insured Entity. If "None", so state.  ☑ None

   (a) Name          (b) Percent of ownership     (c) Nature of business
   (a) Date of acquisition/creation         (if less than 100 percent,    (c) Domestic or foreign
                              list minority owners)

18. Provide the following information on all plants, facilities, branches or offices of the Insured Entity. If "None", so state.  ☐ None

   (a) Location          (b) Domestic or foreign     (c) Estimated number of Employees _413_

**IT IS UNDERSTOOD AND AGREED THAT COVERAGE IS NOT PROVIDED FOR SUBSIDIARIES IN QUESTION 17. UNLESS THE INFORMATION REQUESTED ABOVE IS PROVIDED BY ATTACHMENT. ALSO, PROVIDE DETAILS TO QUESTION 18. BY ATTACHMENT, AS APPROPRIATE.**

## Please Read Carefully

The undersigned, acting on behalf of all Insureds, declare that the statements set forth herein are true and correct and that thorough efforts have been made to obtain sufficient information from each and every Insured proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form.

The undersigned agree that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representations and that they are material and are the basis of the insurance contract. The undersigned further agree that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the Policy. Any material submitted with the Proposal Form shall be maintained on file (either electronically or paper) with the Insurer and shall be deemed to be attached hereto as if physically attached.

It is further agreed that:

- if any significant change in the condition of the applicant is discovered between the date of this Proposal Form and the Policy Inception date, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately;
- any Policy, if issued, will be in reliance upon the truth of such representations; provided, however, with respect to such statements and representations, no knowledge or information possessed by any Insureds, except for those person or persons who executed the Proposal Form, shall be imputed to any other Insureds and further provided that if any person who executed the Proposal Form knew that such statement or representation was inaccurate or incomplete, then this Policy will be void as to all Insureds;
- this Proposal Form has been completed as respects the entire Insured Entity;
- the signing of this Proposal Form does not bind the undersigned to purchase the Insurance.

| _Larry M Katz_ | Title: _President CEO_ |
|---|---|
| Chairman of the Board of Directors, President, or Chief Executive Officer | |

| _Chris Waters_ | Dated: _8/31/06_ |
|---|---|
| Print Name and Title | |

| _Chris Waters HR & Ees Administrator_ | Dated: _8/31/06_ |
|---|---|
| Human Resources Manager (or equivalent position) | |

This Carolina Casualty Insurance Company Proposal Form, including any material submitted herewith, shall be held in strictest confidence.

**A POLICY CANNOT BE ISSUED UNLESS THE PROPOSAL FORM IS PROPERLY SIGNED AND DATED.**

Please submit this Proposal Form including appropriate documentation to:
Monitor Liability Managers, Inc., 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008-4039

| _G.S. Levine Insurance Services_ | Dated: _9/25/06_ |
|---|---|
| Submitted by (PRODUCER) | |

| _Cindy Anderson_ | _0A91059_ |
|---|---|
| AGENT'S NAME (Print Name) | AGENT'S LICENSE NUMBER |

EPL 24515 (rev. 10-01)



Admiral Insurance Company

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

NOTICE TO NEW MEXICO, PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF KENTUCKY: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A CRIME AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF FLORIDA, MINNESOTA, NEW JERSEY, OHIO, AND OKLAHOMA: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO DISTRICT OF COLUMBIA, MAINE, MASSACHUSETTS, TENNESSEE, AND VIRGINIA APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

EPL 24515 (rev. 10-01)

Page 4 of 4

EXHIBIT B

034



# P&A HOLDINGS, INC.

P.O. Box 126878 • San Diego, CA 92112
(619) 233-3522 • fax: (619) 233-3557 • www.bluehaven.com

September 7, 2006

Carolina Casualty Insurance Company
4600 Touchton Road East, Bldg. 100, Suite 400
Jacksonville, FL  32246

Re:  Employment Practices Liability Insurance:  Answer to question 13 on application

Date First Notified:
                    **REDACTED**
Name(s):

Allegation:
                    **REDACTED**

Current Status:  Pre-litigation discovery, mediation unsuccessful

Demand Amount:  Non Made Yet

Attorney's Fees:
                    **REDACTED**

*Common Policy Terms and Conditions Section*

# Admiral Insurance Company

**THIS IS A CLAIMS MADE POLICY.**
**PLEASE READ IT CAREFULLY.**

**Admiral Insurance Company**

## CLAIMS MADE WARNING FOR POLICY

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).

PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

In consideration of the payment of the premium, in reliance on all statements in the **Proposal** and all other information provided to the **Insurer**, and subject to all provisions of this **Policy**, the **Insurer** and **Insureds** agree as follows:

## I. Common Policy Terms and Conditions Section

The Common Policy Terms and Conditions Section of this **Policy** shall apply to all **Coverage Sections**. Unless stated to the contrary in any **Coverage Section**, the terms and conditions of each **Coverage Section** of this **Policy** shall apply only to that **Coverage Section** and shall not apply to any other **Coverage Section** of this **Policy**. If any provision in the Common Policy Terms and Conditions Section is inconsistent or in conflict with the terms and conditions of any **Coverage Section**, the terms and conditions of such **Coverage Section** shall control for the purposes of that **Coverage Section**. Any defined term referenced in this Common Policy Terms and Conditions Section and also defined in a **Coverage Section** shall, for the purposes of coverage under that **Coverage Section**, have the meaning set forth in that **Coverage Section**.

## II. Extended Reporting Period

A.  If the **Named Insured** cancels or if the **Insurer** or the **Named Insured** refuses to renew this **Policy**, then the **Named Insured** shall have the right, upon payment of the appropriate percentage of the "full annual premium", as stated in Item 8. of the Declarations, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made and reported during the appropriate period of months, as stated in Item 8. of the Declarations, after the date upon which the **Policy Period** ends, but only with respect to any **Wrongful Act** fully occurring prior to the end of the **Policy Period** and otherwise covered by this **Policy**. Such period of months shall be referred to as the Extended Reporting Period. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **Policy Period** for all **Coverage Sections** purchased as part of this **Policy**. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within 30 days of the effective date of cancellation or non-renewal.

B.  The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period. The Extended Reporting Period is not cancelable.

## III. Definitions

Whenever printed in boldface type and whether in the singular or plural form in this **Policy**, the following terms shall have the meanings indicated below.

A.  "**Coverage Section(s)**" means, individually or collectively, the purchased **Coverage Sections** listed in Item 3. of the Declarations and attached hereto.

B.  "**Insured Entity**" means the **Named Insured** and any **Subsidiary**.

C.  "**Insurer**" means the entity issuing this **Policy** as listed on the Declarations Page.

D.  "**Named Insured**" means the entity designated in Item 1. of the Declarations.

E.  "**Policy**" means, collectively, the Declarations, the Common Policy Terms and Conditions Section, the **Coverage Sections**, and the **Proposal**.

F.  "**Policy Period**" means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this **Policy**.

G.  "**Proposal**" means the Proposal Form(s) and any material submitted therewith.

H.  "**Subsidiary(ies)**" means:

  1.  an entity of which the **Named Insured** owns on or before the inception of the **Policy Period** more than 50 percent of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**, or

  2.  an entity, subject to the terms of section V. A. of the **Coverage Section(s)**, that the **Insured Entity** forms or acquires during the **Policy Period**.

## IV. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured**:

A.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged nuclear reaction, radiation or contamination, regardless of cause.

CT 2340 (01-06) Common Policy Terms and Conditions Section

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**Admiral Insurance Company**

## V. Limits of Liability and Deductibles

A.    The Limits of Liability stated in Item 4. of the Declarations are the limits of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period and the Extended Reporting Period (if purchased). The Limits of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limits of Liability stated in Item 4. of the Declarations. In the event the Limits of Liability stated in Item 4. of the Declarations are exhausted by payment of Loss, or have been tendered to or on behalf of the Insured, then any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished.

B.    The maximum Limit of Liability for all Claims under this Policy shall not exceed the aggregate Limit of Liability stated in Item 4. B. of the Declarations.

C.    Costs of Defense are not payable by the Insurer in addition to any applicable Limits of Liability. Costs of Defense are part of Loss and as such are subject to the applicable Limits of Liability for Loss.

D.    The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Deductible amount stated in Item 5. of the Declarations. Such Deductible amount shall be borne by the Named Insured with regard to all Loss arising thereunder. In the event a Claim is covered under more than one Coverage Section, the largest applicable Deductible shall apply.

E.    One Deductible amount shall apply to each and every Claim. If the Insurer advances any Loss within the Deductible, the Named Insured shall, upon written demand, reimburse the Insurer for such amounts within 30 days. If the Named Insured fails to pay the Deductible, then all Insureds shall be jointly and severally obligated to pay the Deductible. Any funds so advanced by the Insurer shall serve to reduce the Limit of Liability to the extent that they are not repaid to the Insurer. If the Insurer brings suit to collect the Deductible, then the Insured responsible to pay the Deductible also shall pay the legal fees, costs and expenses incurred by the Insurer to collect the Deductible.

## VI. Defense, Cooperation and Settlements

A.    An Insured shall not admit liability, enter into any settlement agreement, stipulate to any judgment, agree to arbitration, or incur Costs of Defense without the Insurer's prior written consent. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to full information and all particulars it may request in order to reach a decision regarding such consent. Any Loss incurred and settlements agreed to prior to the Insurer giving its consent shall not be covered hereunder.

B.    The Insurer shall have the right and the duty to defend any Claim for Damages which are covered by this Policy. The Insurer's right and duty to defend any Claim shall end when the applicable Limits of Liability stated in Item 4. of the Declarations has been exhausted by the payment of Loss, or has been tendered to, or on behalf of, the Insured or to a court of competent jurisdiction. The Insurer has no obligation to provide Costs of Defense for any Claim for Damages not covered by this Policy.

C.    Each Insured shall cooperate with the Insurer in the defense and settlement of any Claim, and in enforcing any right of contribution or indemnity against any person or organization that may be liable to the Insured, at no cost to the Insurer. Upon the request of the Insurer, the Insured shall submit to examination and interrogation, under oath if required by a representative of the Insurer, and shall attend hearings, depositions and trials, assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, as well as giving written statements to the Insurer's representatives, and meeting with such representatives for purposes of investigation or defense, all without charge to the Insurer.

D.    The Insurer shall not settle any Claim without the Named Insured's consent. If, however, the Named Insured shall refuse to consent to any settlement recommended by the Insurer, which is acceptable to the claimant, and shall elect to contest the Claim, or continue any civil, criminal, administrative, or arbitration proceedings in connection with such Claim, then the Insurer's liability for the Claim shall be the amount for which the Claim could have been settled, including Costs of Defense incurred up to the date of such refusal, and 75 percent of such Loss excess of the amount for which the Claim could have been settled. It is a condition of this insurance that the remaining 25 percent of such Loss shall be borne by the Insureds at their own risk. Such amounts are subject to the provisions of section V. of the Common Policy Terms and Conditions Section of this Policy.

## VII. Notice of Claim and Multiple Claims

A.    As a condition precedent to their rights under this Policy, an Insured shall give the Insurer written notice of any Claim as soon as practicable, but in no event later than 90 days after such Claim is first made.

B.    If during the Policy Period or the Extended Reporting Period (if applicable) the Insureds become aware of any fact, circumstance or situation which may reasonably be expected to give rise to a Claim being made against any Insured and shall give written notice to the Insurer, as soon as practicable (but prior to the expiration of or cancellation of the Policy), of:

    1.    the specific fact, circumstance or situation, with full details as to dates, persons, and entities involved; and

    2.    the injury or damages which may result therefrom; and

    3.    the circumstances by which the Insured first became aware thereof;

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

EXHIBIT B

038

**Admiral Insurance Company**

then any **Claim** subsequently made arising out of such fact, circumstance or situation shall be deemed to have been made when notice was first given to the **Insurer**.

C. All **Claims** based upon or arising out of the same **Wrongful Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Acts** or **Related Wrongful Acts**, shall be considered a single **Claim**. Each **Claim** shall be deemed to be first made at the earliest of the following times:

 1. when the earliest **Claim** arising out of such **Wrongful Act** or **Related Wrongful Acts** is first made, or

 2. when notice pursuant to section VII. B. above of a fact, circumstance or situation giving rise to such **Claim** is given.

D. In addition to furnishing the notice as provided in sections VII. A. and VII. B. above, the **Insureds** shall give the **Insurer** such information and cooperation as it may reasonably require and shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

## VIII. General Conditions

### A. Termination of Policy and Non-Renewal

 1. This **Policy** shall terminate at the earliest of the following times:

  a. upon the receipt by the **Insurer** of written notice of cancellation from the **Named Insured**;

  b. upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations;

  c. at such other time as may be agreed between the **Named Insured** and the **Insurer**; or

  d. upon written notice by the **Insurer** of cancellation for non-payment of premium.

 2. The **Insurer** may not cancel this **Policy** except for non-payment of any premium when due. The **Insurer** shall provide at least 20 days written notice to the **Named Insured** prior to any cancellation for non-payment of any premium.

 3. If this **Policy** is cancelled by the **Named Insured**, the **Insurer** shall retain the customary short rate proportion of the premium herein. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

 4. If the **Insurer** decides not to renew this **Policy**, the **Insurer** shall provide written notice to the **Named Insured** at least 60 days prior to the end of the **Policy Period**. The notice shall include the reason for such non-renewal.

 5. Any notices to be given to the **Named Insured** under this section VIII. shall be provided to the **Named Insured** at the last known principal address and to its insurance agent or broker. The mailing by certified mail of such notice shall be sufficient.

### B. Proposal

The **Proposal** is the basis of this **Policy** and is incorporated in and constitutes a part of this **Policy**. A copy of the Proposal Form(s) is attached hereto. Any material submitted with the Proposal Form(s) shall be maintained on file with the **Insurer** and shall be deemed to be attached hereto as if physically attached. It is agreed by the **Insureds** that the statements in the **Proposal** are their representations, that they are material and that this **Policy** is issued in reliance upon the truth of such representations. With respect to such statements and representations, no knowledge or information possessed by any **Insureds** shall be imputed to any other **Insureds**.

If any person or persons knew as of the **Policy** inception date that such declarations and statements contained in the Proposal Form(s) were untrue, inaccurate or incomplete, then this **Policy** will be void as to that person or persons.

However, if the Chairperson of the Board of Directors, President, Chief Executive Officer, or Chief Financial Officer of the **Insured Entity** knew as of the **Policy** inception date that such declarations and statements contained in the Proposal Form(s) were untrue, inaccurate or incomplete, then this **Policy** will be void as to that person or persons and the **Insured Entity**.

### C. Action Against the Insurer

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **Policy**, nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **Policy** to the extent of the insurance afforded by this **Policy**. No person or organization shall have any right under this **Policy** to join the **Insurer** as party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives. Bankruptcy or insolvency of the **Insureds** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**Admiral Insurance Company**

D. **Changes in Exposure**

If during this **Policy Period**:

1.  the **Named Insured** shall consolidate or merge with or into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert, or

2.  any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50 percent of the voting power for the election of Directors of the **Named Insured**, or acquires the voting rights of such an amount of such securities;

(either of the above events herein referred to as "Transaction")

then, this **Policy** shall continue in full force and effect as to any **Wrongful Acts** fully occurring prior to the Transaction, but there shall be no coverage afforded by any provision of this **Policy** for any actual or alleged **Wrongful Acts** occurring after the Transaction. This **Policy** may not be cancelled following a Transaction and the entire premium for this **Policy** shall be deemed fully earned as of the Transaction. The **Named Insured** shall give the **Insurer** written notice of the Transaction as soon as practicable but not later than 30 days after the Transaction.

In the event of a Transaction, the **Named Insured** shall have the right, upon payment of an additional 75 percent of the "full annual premium", to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made and reported during the 12 months after the Transaction, but only with respect to any **Wrongful Act** fully occurring prior to the Transaction and otherwise covered by this **Policy**. Such 12 month period shall be referred to as the Run Off Period. As used herein, "full annual premium" means the premium level in effect immediately prior to the Transaction for all **Coverage Sections** purchased as part of this **Policy**. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within 60 days of the Transaction.

In the event of a Transaction, the **Named Insured** shall have the right to purchase the Run Off Period but shall have no right to purchase the Extended Reporting Period described in section II. of this **Policy**.

The additional premium for the Run Off Period shall be fully earned at the inception of the Run Off Period. The Run Off Period is not cancelable. The Limit of Liability for the Run Off Period shall be part of, and not in addition to, the applicable Limits of Liability stated in Item 4. of the Declarations.

E. **Subrogation**

In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Insureds**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this **Policy** unless such **Insured** has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such **Insured** was not legally entitled.

F. **Assignment**

This **Policy** and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

G. **Entire Agreement**

By acceptance of this **Policy**, the **Insureds** and the **Insurer** agree that this **Policy** and any written endorsements attached hereto constitute the entire agreement between the parties.

H. **Representation by Named Insured**

It is agreed that the **Named Insured** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving and receiving of notices, the payment of premiums and the receiving of any return premiums that may become due under this **Policy**, the receipt and acceptance of any endorsements issued to form a part of this **Policy** and the exercising or declining to exercise any right to an Extended Reporting Period.

I. **Coverage Territory**

This **Policy** applies to any **Wrongful Act** taking place anywhere in the world.

In witness whereof, the **Insurer** has caused this **Policy** to be signed by its President and Chief Executive Officer and Secretary, but this **Policy** shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

_James S. Carey_

President and Chief Executive Officer

Secretary

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

EXHIBIT B

040

*Employment Practices Liability Insurance*
*Coverage Section*

# Admiral Insurance Company

**THIS IS A CLAIMS MADE POLICY.
PLEASE READ IT CAREFULLY.** ◄

**Admiral Insurance Company**

## CLAIMS MADE WARNING FOR POLICY

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, in reliance on all statements in the **Proposal** and all other information provided to the **Insurer**, and subject to all provisions of this **Policy**, the **Insurer** and **Insureds** agree as follows:

## I. Insuring Agreement

### Employment Practices Liability Insurance

This **Policy** shall pay on behalf of the **Insureds** all **Loss** arising from any **Claim** first made against the **Insureds** during the **Policy Period** and reported to the **Insurer** in writing during the **Policy Period** or within 90 days thereafter, for any **Wrongful Act**.

## II. Extended Reporting Period

Refer to Common Policy Terms and Conditions Section.

## III. Additional Definitions

In addition to the Definitions listed in section III. of the Common Policy Terms and Conditions Section, whenever printed in boldface type, and whether in the singular or plural form, in this **Coverage Section** the following terms shall have the meanings indicated below.

A.    "**Claim(s)**" means a written demand for monetary or non-monetary relief or an administrative or regulatory investigation or proceeding commenced by or before a federal, state, local or foreign agency; provided, however, the term **Claim** shall not include any grievance or arbitration subject to a collective bargaining agreement. A **Claim** shall be deemed to have been first made at the time notice of the **Claim** is first received by any **Insured**.

B.    "**Costs of Defense**" means reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a covered or potentially covered **Claim** against the **Insureds**, but excluding salaries, wages, overhead or benefit expenses associated with any **Insured**, or any amount covered by the duty to defend obligation of any other insurer.

C.    "**Damages**" means a monetary judgment (including back pay and front pay), award or settlement, pre-judgment interest and post-judgment interest; provided, however, **Damages** shall not include:

    1.    taxes (provided, however, that the **Insurer** will reimburse an **Insured Entity** for any employer share of payroll taxes on any portion of damages or settlements which constitute back pay otherwise considered **Damages**), civil or criminal fines, or penalties imposed by law, or

    2.    payment of insurance, disability, pension, health or other plan benefits claimed by or on behalf of any former or current **Employee**, or that a claimant would have been entitled to as an **Employee** had the **Insured Entity** provided the claimant with a continuation of insurance, or

    3.    costs incurred by any **Insured** to make any building or property more accessible or accommodating to any disabled person, or

    4.    commissions, bonuses, profit sharing or severance payments, or

    5.    future wages or benefits of any reinstated **Employee** or wages or benefits associated with the continued employment of an **Employee**, or

    6.    any actual or potential ownership interest in the **Insured Entity** or the value of any such ownership interest, including, but not limited to, stock and/or stock options, or

    7.    any matter deemed uninsurable under the law pursuant to which this **Policy** shall be construed.

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**Admiral Insurance Company**

---

Damages also means, where insurable, liquidated, punitive, or exemplary damages, or any multiplied damages award in excess of the amount so multiplied. Such coverage for liquidated, punitive, exemplary or multiplied damages is part of and not in addition to the Limits of Liability, and any payment of such damages shall serve to reduce the Limits of Liability. Only for the purpose of resolving any dispute between the **Insurer** and the **Insured** regarding whether such liquidated, punitive, exemplary or multiplied damages are insurable under this **Policy**, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

1. those damages were awarded or imposed, or
2. any **Wrongful Act** occurred for which such damages were awarded or imposed, or
3. the **Insured** resides, is incorporated or has its principal place of business, or
4. the **Insurer** is incorporated or has its principal place of business.

D. **"Employee"** means:

1. an individual whose labor or service is engaged by and directed by an **Insured Entity**, including part-time, leased, seasonal and temporary individuals, or
2. an individual who is a volunteer, intern, or independent contractor for the **Insured Entity**, but only if the **Insured Entity** provides indemnification to such individual in the same manner as that provided to the **Insured Entity's** employees.

An individual's employment status shall be determined as of the date of the **Wrongful Act**.

E. **"Harassment"** means unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature that:

1. is explicitly or implicitly made a condition of employment, or
2. are used as a basis for employment decisions, or
3. create a work environment that interferes with performance.

Harassment also means assault or battery, but only if related to a charge of sexual harassment.

F. **"Insured(s)"** means:

1. any director, officer, or **Employee** of an **Insured Entity** while acting solely within the course and scope of employment with the **Insured Entity**, or
2. an **Insured Entity**.

This **Coverage Section** shall cover **Loss** arising from a **Claim** made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual **Insured** for a **Claim** arising solely out of his or her status as the spouse of an individual **Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the individual **Insured** and the spouse, or property transferred from the individual **Insured** to the spouse; provided, however, this extension shall not afford coverage for any **Claim** for any **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any **Wrongful Act** of an individual **Insured**.

G. **"Loss"** means **Damages** and **Costs of Defense**.

H. **"Prior and Pending Litigation Date"** means the date set forth in Item 7. 1. of the Declarations with respect to the Employment Practices Liability Insurance **Coverage Section**.

I. **"Related Wrongful Act(s)"** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

J. **"Wrongful Act(s)"** means any actual or alleged act by an **Insured** arising from an actual or potential employment relationship with the claimant for:

1. discrimination or **Harassment** because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, marital status, or any other basis prohibited by law which results in termination of the employment relationship, or demotion or failure or refusal to hire or promote, or failure to accommodate an **Employee** or potential **Employee**, or denial of an employment privilege, or the taking of any adverse or differential employment action, or
2. sexual **Harassment** including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance, or
3. termination, constructive discharge, wrongful failure to hire, wrongful demotion, negligent retention, negligent supervision, negligent hiring, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of any implied contract or implied agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation.

---

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

EXHIBIT B

## Admiral Insurance Company

### IV. Additional Exclusions

In addition to the Exclusions listed in section IV. of the Common Policy Terms and Conditions Section, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured**:

A.  for:

  1.  physical injury to or destruction of any tangible property, including the loss of use thereof, or

  2.  bodily injury, sickness, disease, and death; provided, however, this exclusion shall not apply to the following personal injury damages or causes of action in connection with a **Claim** for a **Wrongful Act** for: emotional distress, mental anguish, defamation, invasion of privacy or humiliation;

B.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974, including amendments thereto;

C.  for any actual or alleged breach of any oral or written contract or agreement; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged breach of any implied contract or implied agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation;

D.  which is insured in whole or in part by another valid policy, except with respect to any excess beyond the amount or amounts of coverage under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise;

E.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

  1.  any **Wrongful Act** alleged in any claim which has been reported, or in any circumstance of which notice has been given, prior to the **Policy Period** under any other policy, or

  2.  any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** which has been the subject of such claim or notice, would constitute **Related Wrongful Acts**;

F.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

  1.  any prior or pending litigation, administrative or arbitration proceeding as of the **Prior and Pending Litigation Date**, or

  2.  any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, administrative or arbitration proceeding,

  regardless of the legal theory upon which such **Claim** is predicated;

G.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged violation of the Worker's Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, the National Labor Relations Act, including amendments thereto, or any similar provisions of any federal, state, local or foreign statutory or common law; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law;

H.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged obligations under any workers' compensation, social security, disability benefits, or unemployment compensation law, including amendments thereto, or any similar provisions of any federal, state, local or foreign statutory or common law; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law;

I.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any federal, state, local or foreign wage and hour laws, including, without limitation, the Fair Labor Standards Act; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law or amounts owed under the Equal Pay Act of 1963.

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**Admiral Insurance Company**

## V. Changes in Exposure

A. **Acquisition or Creation of a Subsidiary**

If during this **Policy Period** the **Insured Entity** forms or acquires a **Subsidiary**, then this **Policy** shall provide coverage pursuant to this **Coverage Section**:

1. automatically for an entity whose assets total less than 25 percent of the total consolidated assets of the **Insured Entity** as of the **Policy** inception date, or

2. for an entity whose total assets are equal to or greater than 25 percent of the total consolidated assets of the **Insured Entity** as of the **Policy** inception date, but only upon the condition that within 90 days of it becoming a **Subsidiary**, the **Named Insured** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and/or amendment of the provisions of this **Policy** required by the **Insurer** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Named Insured** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

An entity becomes a **Subsidiary** when the **Insured Entity** owns more than 50 percent of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**. An entity ceases to be a **Subsidiary** when the **Insured Entity** ceases to own more than 50 percent of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**.

In all events, coverage afforded pursuant to this **Coverage Section** with respect to a **Claim** made against a **Subsidiary** shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

In witness whereof, the **Insurer** has caused this **Policy** to be signed by its President and Chief Executive Officer and Secretary, but this **Policy** shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

_James S. Carey_

President and Chief Executive Officer

Secretary

EPL 4300 (01-06) Employment Practices Liability Insurance Coverage Section

Page 4 of 4

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 152177   – MB
* * C O P Y * *
June 23, 2008**
12:37:42

**Civ Fil Non-Pris**
USAO #.: 08CV1103 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CK
Check#.: BC71078

**Total-> $350.00**

FROM: ADMIRAL INSURANCE CO VS
      BLUE HAVEN NATL MGMT, ET AL

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ADMIRAL INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff  Camden, N.J.
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert D. Hoffman; Charlston, Revich & Wollitz LLP; 1925 Century Park East, Suite 1250, L.A. California 90067 (310) 551-7016

## DEFENDANTS

BLUE HAVEN NATIONAL MANAGEMENT, INC.; P&A HOLDINGS INC.; VICTORIA WILKINS

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**08 CV 1103 JM RBB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332(a)(1), diversity jurisdiction

Brief description of cause:
Declaratory relief on lack of potential coverage for a defendant entity in underlying suit; reimbursement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE
DOCKET NUMBER

DATE 06/20/2008

SIGNATURE OF ATTORNEY OF RECORD  Robert D. Hoffman

## FOR OFFICE USE ONLY

RECEIPT # 152177   AMOUNT $350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FD 06/23/08

**ORIGINAL**

